IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| QUEST SOLUTION, INC.; HTS IMAGE PROCESSING, INC.; HTS (USA) INC., <br><br> Plaintiffs, <br><br> v. <br><br> REDLPR, LLC; SAGY AMIT; JEREMY BARKER; RIVERLAND TECHNOLOGIES LLC, <br><br> Defendants | Case No. 2:19-cv-437-CW-DBP <br><br> **MEMORANDUM DECISION AND ORDER** <br><br> Judge Clark Waddoups |

HTS (USA) Inc. ("HTS")[1] develops and deploys license plate recognition technology ("LPR") at international airports, shopping centers, and so forth—both in the United States and in other nations. Defendants Sagy Amit and Jeremy Barker are former employees of HTS who resigned their employment and established RedLPR, LLC as a competing business. HTS contends the defendants[2] misappropriated trade secrets when they left and have harmed HTS due to the defendants use of such trade secrets. HTS also asserts claims for breach of fiduciary duty, tortious interference with economic relations, unjust enrichment, unfair competition, and breach of implied covenant of good faith and fair dealing (collectively "Non-Trade Secret Claims").

---

[1] A dispute exists between the parties about whether Quest Solution, Inc. and HTS Image Processing, Inc. are proper plaintiffs. Until the issue is resolved, the court's reference to HTS refers only to HTS (USA) Inc.

[2] Riverland Technologies LLC is not part of the present motions before the court. Accordingly, in this decision, the term "the defendants" refers only Sagy Amit, Jeremy Barker, and RedLPR, LLC ("RedLPR").

Defendants move for summary judgment on HTS' claims. HTS asserts summary judgment is premature because the parties are still engaged in fact discovery. It moves under Rule 56(d) of the Federal Rules of Civil Procedure for summary judgment to be denied on the ground that further discovery is needed.

Multiple motions also have been filed about whether certain documents, contentions, and legal arguments should be sealed. Such motions have gone through various iterations due to arguments raised by the parties.

Based on the present record before the court, it denies without prejudice Defendants' motion for summary judgment. Nevertheless, it orders HTS to identify with more particularity the trade secrets that are at issue. It grants the Rule 56(d) motion and directs that certain documents shall remain under seal until otherwise directed by the court.

## ANALYSIS

I. **TRADE SECRETS**

    A. **Particularity Requirements**

HTS asserts claims under the federal Defend Trade Secrets Act and the Utah Uniform Trade Secrets Act. "Most forms of intellectual property have boundaries that are defined before the commencement of litigation." *TLS Mgmt. & Mktg. Srvs., LLC v. Rodriguez-Toledo*, 966 F.3d 46, 51 (1st Cir. 2020). This is so even if there is a dispute about the scope of those boundaries. *Id.* "Trade secrets are different. There is no requirement of registration and, by definition, there is no public knowledge of the trade secret in advance of litigation." *Id.* at 51–52. Because of the unique aspects of trade secrets, it "raises the possibility that the trade secret owner will tailor the scope of the trade secret in litigation to conform to the litigation strategy." *Id.* at 52. A defendant may face an ever-changing field where goal posts are moved, positions are altered, and defenses

cannot be developed because a trade secret claim remains amorphous. *See Next Commc'ns, Inc. v. Viber Media, Inc.*, 758 F. App'x 46, 49 (2d Cir. 2018) (stating plaintiff had "described its trade secret differently at each stage of the litigation").

To address these challenges, Federal courts typically require identification of a trade secret with reasonable particularity or sufficient definiteness, so the defendant and the court know what issues are before them. *See e.g.*, *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020) (requiring trade secret to be identified with sufficient particularity "because defendants need concrete identification to prepare a rebuttal" and "[c]ourts and juries also require precision" because they lack the "requisite expertise to define what the plaintiff leaves abstract") (quotations and citation omitted)); *Next Commc'ns, Inc.*, 758 F. App'x at 48 (stating "a party must describe the trade secret with specific and concrete information") (quotations and citations omitted)); *Storagecraft Tech. Corp. v. Symantec Corp.*, No. 2:07-cv-856, 2009 U.S. Dist. LEXIS 10608, at *7 (D. Utah Feb. 11, 2009) (stating "the reasonable particularity standard requires that the alleged trade secret be described 'with adequate specificity to inform the defendants what it is alleged to have misappropriated'") (quotations, citations, and alteration omitted)).

Utah applies a different approach. The Utah Supreme Court has held that Utah's trade secret statute does not have a "particularity" requirement. *USA Power, LLC v. PacifiCorp.*, 2016 UT 20, ¶ 48, 372 P.3d 629, 649. Thus, a plaintiff is "not required to identify its trade secret with particularity," *id.* ¶ 47, before discovery may be had on the issue. Nevertheless, the statute does require a "fact-finder to know what it is that the plaintiff claims is not generally known or readily ascertainable." *Id.* ¶ 48. The plaintiff "bear[s] the burden of defining its purported trade secret in a manner that would allow the fact-finder to determine if it met the statutory requirements." *Id.* ¶ 49 (citing *Utah Med. Prods., Inc. v. Clinical Innovations Assocs., Inc.*, 79 F. Supp. 2d 1290, 1313

(D. Utah 1999) (requiring plaintiff to "define its claimed trade secret with the precision and particularity necessary to separate it from the general skill and knowledge possessed" by one skilled in the art)).

Whether one applies a reasonable-particularity requirement for identification purposes, or so one may distinguish a claimed trade secret from the general skills and knowledge possessed by others in the art, a plaintiff bears the burden to define the claimed trade secret sufficiently for discovery to be meaningful, for boundaries to be known, and for the fact-finder to understand what is to be decided.

### B.  Guidelines for Identifying a Trade Secret

Because the standard is reasonable particularity versus absolute definiteness, the question become what is enough?  Although trade secret identification is not susceptible to a "talismanic procedure," *Storagecraft Tech. Corp.*, 2009 U.S. Dist. LEXIS 10608, at *6 (quotations and citation omitted), the court sets forth some guidelines here.  "It is inadequate for plaintiffs to cite and incorporate by reference hundreds of documents that purportedly reference or reflect the trade secret information."  *InteliClear, LLC*, 978 F.3d at 658 (quotations and citation omitted).  It also is inadequate to describe a trade secret in broad, general terms.  The length of a document does not determine its adequacy.

In *IDX Systems Corp. v. Epic Systems Corp.*, 285 F.3d 581, 583 (7th Cir. 2002), the Court addressed whether the plaintiff had adequately identified the claimed trade secrets. The plaintiff asserted "a 43-page description of the methods and processes underlying and the inter-relationships among various features making up IDX's software package" sufficiently identified the trade secret.  *Id.*  The Court disagreed because the information was "too vague" on the one hand and "too inclusive" on the other.  *Id.*  IDX effectively asserted "that all information in or

4

about its software [was] a trade secret." *Id.* Many of the items in the document were readily ascertainable because they could be seen by "any user or passer-by." *Id.* at 584. The document did not delineate which items were known in the industry, and which were not. *Id.* "Simply identifying documents" or the general technology and then leaving a defendant or fact-finder to figure out which parts "contain trade secret information is not enough." *Utah Med. Prods., Inc.*, 79 F. Supp. 2d at 1313.

### C. HTS' Trade Secret Identification

In this case, HTS provided a seventeen-page list of its trade secrets. Amended Discovery Resp., 4–21 (ECF No. 75-6).[3] HTS refers to the design and development of its technology as reflected in over 100 emails between HTS and a vendor. *Id.* at 4. It appears to include every aspect of its technology similar to the disclosure by the plaintiff in *IDX*. HTS also refers to a 2018 Roadmap and repeats much of the same information about the Roadmap four or five times. Although HTS claims its discovery response is confidential, in a non-redacted memorandum,[4] HTS quotes directly from its discovery response as follows:

> For example, HTS' "Roadmap 2018" (Ex. 1-E, designated "COMPANY SENSITIVE – FOR INTERNAL USE ONLY") contains:
>
> • detailed internal analysis of HTS' 'slow speed' cameras, including "N50," "N60," and "N70" models;
>
> • analysis of HTS' 'slow speed' cameras with respect to multiple industry 'verticals,' including a detailed itemization of features missing from HTS' current 'slow speed' camera offerings;

---

[3] When the court cites a page number in the record, it refers to the ECF page number at the top of the page and not to the pagination at the bottom of the page.

[4] The docket entry refers to the document as a redacted memorandum, but no portion of the memorandum itself is redacted. *See generally* Memo. in Opp'n to Sum. J. (ECF No. 73). Only some of the exhibits are redacted.

> • assessments reflecting the importance for HTS to develop and implement enhancements that address the identified missing features in HTS' 'slow speed' cameras, and the complexity involved in such development; and
>
> • the sequence in which HTS planned to develop and implement such enhancements to its 'slow speed' cameras.

*Cf* Memo. in Opp'n to Sum. J., at 12–13, 25 (ECF No. 73) *with* Amended Discovery Resp., at 5–6 (ECF No. 75-6).  Because the Roadmap is addressed multiple times in the discovery response and the same or similar language is repeated each time, the above quote discloses a significant portion of the discovery response.  The fact that HTS disclosed its contents in a non-redacted document shows how little detail it actually has provided about what its trade secrets are.  To the extent HTS is claiming a compilation as a trade secret, it must identify with reasonable particularity how the combination "is outside the general knowledge and not readily ascertainable by proper means," such that it warrants protection.  *Brigham Young Univ. v. Pfizer, Inc.*, 861 F. Supp. 2d 1320, 1323–24 (D. Utah 2012).

       The parties have engaged in a meet and confer, but HTS has not remedied the inadequacies of its disclosures.  Like the plaintiff in *IDX*, HTS' trade secret identification remains both too vague and over-inclusive.  The court therefore directs HTS to identify its claimed trade secrets with the required degree of specificity.  Another opportunity will not be afforded by the court.

       **D.**    **HTS' Algorithm**

       Although HTS has largely failed to identify it trade secrets, the defendants do acknowledge at least one exists.  HTS keeps its source code confidential and has "LPR algorithms that process images from multiple LPR cameras to identify the 'best' image for LPR applications."  Memo. in Opp'n to Sum. J., at 5 (ECF No. 73).  While working for HTS, Amit and Barker referred to this feature as the "secret sauce."  *Id.*  After establishing RedLPR, the defendants have used the same

or similar marketing materials to describe and promote RedLPR's technology. HTS asserts this shows the defendants "all but admit to misappropriating HTS' trade secrets." *Id.* Not so.

Knowledge about a product feature does not equate to knowing the algorithm behind the feature. Marketing brochures commonly describe features based on *what* they do versus *how* they do it. It is the "how" that constitutes HTS' trade secret. The defendants contend, through affidavits, that they developed their own technology on a different platform and with different functionality. They also claim there is no evidence they used any alleged trade secrets.

There is evidence, however, that the co-founder of Riverland Technologies LLC used to work at HTS, and while Amit and Barker were still employed at HTS, they "discussed developing potential business opportunities between Riverland and HTS." Robert A. Byerly Decl., at ¶ 11 (ECF No. 50-34). At a later time, Riverland asked Amit to sign a non-disclosure agreement, which Amit did on behalf of HTS. The non-disclosure agreement states, among other things, that it is to "[e]valuate business opportunities." *Id.* ¶ 15. The defendants have provided affidavits that explain how that language was included and attest that no confidential information from HTS was shared with Riverland. *See id.* ¶¶ 15, 22. After leaving HTS, however, the defendants have worked with Riverland to develop the RedLPR technology. *Id.* ¶ 23. Although defendants have provided affidavits that contest the meaning of the non-disclosure agreement and HTS' relationship with Riverland, disputed issues of material fact exist about the nature of the relationship and the meaning of the non-disclosure agreement. Such disputed issues cannot be decided on summary judgment.

Moreover, the defendants have failed to respond to HTS' discovery requests. Arguing that HTS has produced no evidence when some information is uniquely in the defendants' control is not well-taken. The court directs both parties to adhere to disclosure requirements. The court

notes, however, that HTS must first disclose its claimed trade secrets, with the required detail, before it is entitled to discovery on trade secret matters from the defendants. HTS may obtain discovery on issues that do not involve trade secrets.

## II.     NON-TRADE SECRET CLAIMS

The defendants contend HTS' Non-Trade Secret Claims should be dismissed because they are preempted under Utah's trade secret law. HTS, however, claims more than trade secret misappropriation. For example, HTS contends Amit and Barker are using HTS' marketing materials. Marketing materials developed by HTS may be the exclusive property of HTS. Although marketing materials are not a trade secret, they have value and take time and resources to develop. If Amit and Barker are using marketing materials developed by HTS, then such conduct may be actionable under one or more of HTS' Non-Trade Secret Claims.

HTS also asserts breach of implied covenant of good faith and fair dealing. HTS asserts that Amit and Barker are bound by confidentiality provisions in an employment agreement they entered into in 2018. HTS neglected to mention to the court that the same employment agreement was the subject of litigation in California. Amit sued HTS for the non-payment of commissions and other benefits. *See* Cal. Complaint (ECF No. 80-4). HTS moved to compel arbitration based on an arbitration provision in the employment agreement. Mot. to Compel (ECF No. 80-5). Briefing on the motion directly addressed whether Amit ever entered into the 2018 Employment Agreement. *See* Memo. in Opp'n to Mot. (ECF No. 80-6); Reply Memo. (ECF No. 80-7). In a Minute Order, the California court tentatively ruled "there was no signed agreement to arbitrate, nor was there an implied agreement."[5]  Minute Order, at 1 (ECF No. 80-8).

---

[5] Based on the docket entries, the tentative ruling was finalized, and the case proceeded in district court. *See generally* Docket Entries, at 3–7 (ECF No. 49-33).

HTS asserts the California court only addressed the arbitration provision. This court disagrees. The arbitration provision was not viewed in isolation. The entirety of circumstances surrounding the employment agreement was before the court. The court cited several factors supporting the absence of a signed agreement. Those same factors apply to Barker. It therefore is questionable whether the 2018 Employment Agreement applies in this matter.

The 2018 Employment Agreement, however, is not the only agreement at issue. Amit and Barker entered an earlier employment agreement, and the terms of that agreement are at issue. It raises whether Amit and Barker improperly retained materials belonging to HTS.

These and other allegations show that HTS is not merely claiming misappropriation of trade secrets. The court therefore denies summary judgment on the Non-Trade Secret Claims because the defendants have failed to show, at this stage of the litigation, that the claims are preempted.

### III.   RULE 56(D) MOTION

HTS contends it cannot adequately address the defendants' motion for summary judgment because discovery is ongoing and there are facts uniquely in the possession of the defendants. HTS moves for summary judgment to be denied based on Rule 56(d) of the Federal Rules of Civil Procedure. The court grants the motion because additional discovery is needed to decide this case properly on the merits. The court, however, notes the following.

On or about October 18, 2019, HTS drafted a letter containing damaging remarks against the defendants. HTS allegedly sent the letter out "[o]n the eve of the largest annual industry trade show . . . to RED's customers, potential customers and many industry participants." Def.'s Opp'n to Maintaining Seal, at 4–5 (ECF No. 80). The letter reports:

> Recently, HTS conducted an internal investigation and discovered that [former employees] engaged in a wide-ranging campaign of unlawful conduct. Specifically, the investigation revealed that these employees – **while still employed by HTS** – spent months secretly misappropriating HTS' technical and business trade secrets. **These stolen trade secrets are the foundation upon which RedLPR was built and currently operates**.

Letter, at 1 (ECF No. 80-2) (emphasis added). When one makes that type of accusation against another, and publishes it broadly, there needs be strong evidence to support such accusations. The letter represents the existence of trade secrets and that actual evidence was found during the investigation showing the secrets are incorporated into RedLPR's technology. Consequently, it is troubling that HTS has failed to identify its trade secrets appropriately and is now asserting it needs discovery to prove misappropriation and use of HTS' technology. The court cautions HTS against using these proceedings to harm a competitor based on mere supposition. Improper use of litigation is not taken lightly by this court.

### IV. MOTIONS TO SEAL

#### A. Good Faith Designations

There are seven motions before the court regarding whether certain documents, contentions, and legal arguments should be sealed. Local Rule 5.3(b) requires the person asserting confidentiality to bear the burden of showing if a document should be sealed. In this case, it is HTS who has produced documents marked "confidential" and has sought to keep business events out of the public eye.

When the defendants filed their summary judgment motion, they redacted three sections of their brief and multiple exhibits under protest and moved for HTS to show why the information should be sealed. HTS complied and filed its own motion, but moved to retain the seal only on a portion of what the defendants had redacted.

The defendants opposed HTS' motion to maintain the seal and attached twelve more exhibits. Opp'n Memo to Mot. to Seal (ECF Nos. 78, 80). It redacted the entire motion, all of the exhibits, and said it was HTS' burden to show why they should remain sealed. HTS' reply noted that none of the twelve additional exhibits had been designated by it as confidential and six of the exhibits were public court filings. Reply in Supp. of Mot. to Seal., at 2 (ECF No. 86). It therefore stated the memorandum and all of the exhibits attached to the defendants' opposition memorandum could be unsealed. *Id.* at 3.

Although the defendants are correct that HTS bears the burden to show why documents HTS has labeled "confidential" should be sealed, this does not absolve the defendants from acting in good faith when it redacts a document. Sealing the twelve exhibits and then shifting the burden to HTS to show why they should be sealed appears to have been a form of gamesmanship that is not appropriate.

Confidential documents fall under a broader umbrella than trade secret documents. Local Rule 5.3 allows confidential documents to be sealed even if they are not a trade secret. The defendants should have some knowledge about the type of business information that is confidential. Moreover, based on how HTS has responded and limited its requests to seal, the defendants should now be better informed about what HTS is claiming as confidential and what it is not.[6] Although the court cautions the defendants to exercise greater care in the future with their redactions, this does not mean the pendulum should swing to the opposite side where the defendants redact little to no information. Again, the standard is good faith, which both parties should diligently apply.

---

[6] Recently, the defendants filed a Notice of Non-opposition to HTS' latest motion to seal. The court recognizes the defendants' efforts to not multiply the proceedings unnecessarily.

B.    **Documents that Are Confidential**

As stated above, the motions to seal have gone through several iterations that have narrowed the requests to seal. Having reviewed the parties' arguments and filings, the court finds that HTS has appropriately limited its designations of what should be sealed. The court's determination is based on whether a document is confidential, not whether it is a trade secret. The following designates which items should remain sealed and which should be unsealed:

| Main Docket Number | Retain Seal | Unseal | Source to Unseal |
|---|---|---|---|
| ECF No. 50 | Ex. A22 (ECF No. 50-13) Ex. B2 (ECF No. 50-23) Ex. B4 (ECF No. 50-25) Ex. B7 (ECF No. 50-28) Ex. D5 (ECF No. 50-39) | ECF No. 50 *and* all exhibits to the motion not otherwise listed in Column 2. | ECF Nos. 57, 58, 91, and court determination. |
| ECF No. 58 | Ex. 6 (ECF No. 58-6) Ex. 12 (ECF No. 58-7) | ECF No. 58[7] *and* all exhibits to the motion not otherwise listed in Column 2. | ECF Nos. 57, 58, 91, and court determination. |
| ECF No. 75 | ECF No. 75 *and* all exhibits thereto | | Court determination. |
| ECF No. 80 | | ECF No. 80 *and* all exhibits thereto | ECF No. 86. |
| ECF No. 92 | ECF No. 92-1 ECF No. 92-2 ECF No. 92-3 | ECF No. 92 *and* ECF No. 92-4 | Court determination. |
| ECF No. 99 | ECF No. 99[8] *and* ECF No. 99-1 | ECF No. 99-4 ECF No. 99-5 | ECF No. 103 and court determination. |

---

[7] Local Rule 5.3(a) cautions counsel to "refrain from filing motions or memoranda under seal merely because an attached exhibit contains protectable information." ECF No. 57 states it is a redacted motion and ECF No. 58 is the sealed version of that motion. The motions are identical with no redacted or confidential information in them. Instead, it is certain exhibits attached to the motions that are confidential. Accordingly, the motions should not have been "redacted" or filed under seal. The same is true for other filings. Counsel are directed to follow Local Rule 5.3(a) in future filings.

[8] The defendants redacted more portions of the reply and exhibits than HTS states is necessary to protect HTS' confidential information. Although the seal is being maintained on ECF No. 99 and most exhibits thereto, ECF No. 102 contains the same documents, with less redactions, to effectively unseal the over-designations.

|  | ECF No. 99-2<br>ECF No. 99-3 |  |  |
| --- | --- | --- | --- |
| ECF No. 103 | ECF No. 103-1<br>ECF No. 103-3<br>ECF No. 103-4<br>ECF No. 103-5<br>ECF No. 103-6 | ECF No. 103<br>ECF No. 103-2<br>ECF No. 103-7 | ECF No. 109 and court determination |

V. **COURT PROCEDURES**

Because filing documents under seal and providing a hard copy to the Court appears to have presented some challenges to the parties, the court provides the following additional guidance to the parties.

A. When a sealed document is filed, readability is important. Placing a box around *each line* that is sealed makes readability a challenge. The court prefers the sealed portions of motions to be marked merely by highlighting them in yellow. Exhibits to a motion may have a box around a line or item as long as it does not interfere with readability. Exhibit D5 (ECF No. 58-6) is an example where readability is affected.

B. If a document has both a redacted version and a sealed version, only the sealed version needs to be provided to the court in hard copy because that is the version that is readable. When exhibits are submitted in hard copy, they should be submitted in consecutive order and not broken out based on whether they contain confidential information.

C. When printing a hard copy of documents for the court, the ECF information at the top of the page should be included. In other words, the hard copy should be printed from the docket when possible. The docket number and page numbers assist the court in locating information within the record. They also aid when the court cites to information in the record.

As an additional note, requests to submit are not necessary filings, merely optional. The parties may file them to the extent they believe they are helpful to the court.

## **CONCLUSION**

For the reasons stated above, the court HEREBY ORDERS as follows:

1. The Motion for Summary Judgment (ECF No. 49) is DENIED WITHOUT PREJUDICE.

2. Plaintiffs' Motion for Relief under Rule 56(d) (ECF No. 72) is GRANTED.

3. The Clerk shall unseal the documents listed under Column 3 of the table in Paragraph IV.B above.

4. The following motions shall be terminated:[9]

    A. ECF No. 50;
    B. ECF No. 57;
    C. ECF No. 76;
    D. ECF No. 79;
    E. ECF No. 93;
    F. ECF No. 98; and
    G. ECF No. 102.

5. On or before **May 21, 2021**, HTS shall file a document that identifies the trade secrets at issue with reasonable particularity. HTS is granted leave to file the document under seal. Failure to identify its claimed trade secrets with reasonable particularity may result in dismissal of some or all of HTS' alleged trade secret claims.

DATED this 28th day of April, 2021.

BY THE COURT:

Clark Waddoups
United States District Judge

---

[9] Because of how the motions were presented and the iterations they have gone through, they are not readily amenable to being granted or denied. The motions to seal were addressed, however, by the table in Paragraph IV.B. Accordingly, the court directs them to be terminated.