IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| QUEST SOLUTION, INC.; HTS IMAGE PROCESSING, INC.; HTS (USA) INC., <br><br> Plaintiffs, <br><br> v. <br><br> REDLPR, LLC; SAGY AMIT; JEREMY BARKER; RIVERLAND TECHNOLOGIES LLC, <br><br> Defendants | **MEMORANDUM DECISION AND ORDER RE: UNSEALING DOCUMENTS** <br><br><br> Case No. 2:19-cv-437-CW-DBP <br><br> Judge Clark Waddoups |

On August 3, 2023, the court issued a Memorandum Decision and Order (ECF No. 310)[1] (the "August Memorandum Decision") granting Defendants' Motions for Summary Judgment on Plaintiffs' trade secret claims. In that decision, the court cited to documents that Plaintiffs filed *ex parte* and *in camera*. This matter is before the court on whether the August Memorandum Decision should be unsealed in its entirety even though it cites to *in camera* documents. For the reasons stated below, the court concludes the August Memorandum Decision should be unsealed in its entirety. The court further concludes the *in camera* documents also should be unsealed.

---

[1] Because the August Memorandum Decision contained a detailed factual background, the court does not repeat the facts in this decision. When citing to the August Memorandum Decision and other documents in the record, pinpoint citations are to the ECF page numbering at the top of the documents and not to the page numbering at the bottom of the documents.

**FACTUAL BACKGROUND**

On April 18, 2022, Defendant Sagy Amit ("Amit") filed a Motion for Rule 11 Sanctions against Plaintiffs.  As part of that motion, Amit asserts Plaintiffs' prefiling investigation focused "on how to inflict the most harm on Defendants personal reputation, instead of looking for merits to [their] frivolous claims."  Mot. for Sanctions, at 10 (ECF No. 243).  Ten days later, Plaintiffs moved for "leave to file certain materials under seal *ex parte* and *in camera* in connection with Plaintiffs' anticipated opposition to *pro se* defendant Sagy Amit's motion for sanctions."  Mot. for Leave to Seal, at 1 (ECF No. 256).  Plaintiffs asserted that they and their "counsel *did* perform [a reasonable prefiling] investigation.  But most of the evidence substantiating these activities is protected by the attorney work product and attorney client privileges."  *Id.* (emphasis in original).  Thus, Plaintiffs sought "leave to submit such privileged materials under seal *ex parte* and *in camera* for the limited purpose of demonstrating the adequacy and reasonableness of the referenced prefiling investigation."  *Id.* (citing *Icon Health & Fitness, Inc. v. Park City Entm't, Inc.*, No. 1:10-cv-195 DAK, 2011 U.S. Dist. LEXIS 72702, at *5 (D. Utah July 5, 2011)). In so doing, Plaintiffs stated they were not waiving "any applicable privileges or protections."  *Id.* at 2.

The court granted the motion, but it did so with qualifications.  The order stated, "[a]t this time, the court will allow Plaintiffs to file the specified documents under seal for *in camera* review due to their alleged privileged nature.  After the court's review, it will determine if the documents should be disclosed to the defendants."  Order (ECF No. 261).  Despite Plaintiffs being placed on notice that the *in camera* documents may need to be disclosed, Plaintiffs elected to provide the documents to the court.

**Summary of *In Camera* Document**

In total, Plaintiffs filed twenty-three exhibits to their opposition memorandum.  Although the court summarized some of their content in its August Memorandum Decision, it now summarizes their content in more detail with some related context.

Exhibit 1 (ECF No. 267-1):  It is a 16-page declaration by Plaintiffs' counsel that discloses discussions he had with his clients and efforts he made to investigate before filing suit.  Counsel also addressed the exhibits he attached to his declaration.  Plaintiffs filed a redacted version of the document (ECF No. 266-1). At times, the redactions exceeded the scope of attorney-client and work product privileges.  For example, the redactions included redacting that Plaintiffs' counsel has a close professional rapport with Yoram Hofman ("Hofman") and has visited Hofman's office in Israel ten times or more; the fact that published patents list Plaintiffs' counsel as the attorney of record and Hofman as the inventor; the content of an email drafted by Amit; the holding of a case; when Riverland Technologies' counsel contacted Plaintiffs' counsel and so on.  Reinitz Decl., ¶¶ 6 & n.2, 33, 46, 63 (ECF No. 267-1).  Plaintiffs' counsel also included events not pertaining to the pre-filing investigation as part of the declaration, which is different from the scope stated in Plaintiffs' motion for leave to file documents *in camera*.

Exhibit 1-A (ECF No. 267-2):  It is a 16-page document containing various emails on disparate topics.  The opening email is a communication between Plaintiffs' counsel and Hofman stating "you may have a case for trade secret misappropriation against your former employee(s)." Email, at 1 (ECF No. 267-2).  The subject line is different from the next email, so it is unclear why this was filed as an email chain.  On pages 1 through 10, the email chain veers to the topic of Plaintiffs filing a cloud-based patent application, what company name the patent should issue

under, and payment for that work.  The email chain includes various people and Plaintiffs have

not explained how the various people on the chain fall under the attorney-client protection.  Pages

11 through 16 change back to Plaintiffs' communications about Amit and Jeremy Barker's

("Barker") activities at RedLPR, LLC ("RED"), potential patent infringement claims, and matters

pertaining to Amit's California lawsuit against Plaintiffs.  Like the other pages of the document,

the communications involve a number of individuals and Plaintiffs have not explained how the

attorney-client privilege encompasses all those on the email chain.

Exhibit 1-B (ECF No. 267-3):  It is a 13-page document mainly consisting of a report and

product comparison that Hofman, Plaintiffs' Chief Technology Officer, drafted.  Attached to the

report are emails that Plaintiffs obtained between defendants and third parties, a screenshot of

Defendant RED's webpage, and a Riverland Technologies non-disclosure agreement ("Riverland

NDA") that Amit signed on behalf of HTS Americas, Inc. while he was employed by that

company.  Although the Riverland NDA is unsealed elsewhere in the record (ECF No. 49-51),

Plaintiffs want the NDA language redacted because the NDA was attached to a privileged email.

Proposed Redactions, at 20–21 (ECF No. 313); Response to Order to Show Cause, at 2 (ECF No.

312) (asserting when "non-privileged elements were incorporated within privileged

communications and materials," the privilege then "attaches to the document or communication

as a whole").

Exhibit 1-C (ECF No. 267-4):  It is a 2-page document where Hofman assisted in setting

up a telephone call between Haim Nissenson ("Nissenson") and Plaintiffs' counsel.  Plaintiffs

assert "Mr. Nissenson is not an officer or director of any party to this case. (He is a shareholder of

and consultant to Quest Solution – now Omniq)."  Email, at 3 (ECF No. 267-20).  Additionally,

Plaintiffs stated "[i]t remains unclear what (if any) testimony Mr. Nissenson would provide that would meaningfully bear on any of the claims or defenses in this case." *Id.* Although Plaintiffs' internal communications state Nissenson is "based in New York," Plaintiffs informed Defendants that he "does not reside in the U.S." *Cf* Email, at 2 (ECF No. 267-4) *with* Email, at 3 (ECF No. 267-20). Based on the above, Plaintiffs would not produce Nissenson for deposition. Email, at 3 (ECF No. 267-20). Because Nissenson is associated only with one of the Plaintiffs as a consultant and does not have meaningful information relevant to the claims and defenses in the case, it is unclear whether the attorney-client privilege attaches to communications involving him. Although Plaintiffs bear the burden of showing the attorney-client privilege exists, they did not address the issue.

Exhibit 1-D (ECF No. 267-5): It is a 16-page document with an updated report from Hofman based on additional information that Nissenson requested. Nissenson is copied on the email. Because Nissenson is included on the communication, the same issue exists about whether the exhibit is protected under the attorney-client privilege.

Exhibit 1-E (ECF No. 267-6): It is a 1-page document where Hofman provided counsel with Barker and Amit's email passwords that they had while employed by HTS (USA).

Exhibit 1-F (ECF No. 267-7): It is a 2-page document where Hofman inquired whether counsel was able to access Barker and Amit's emails via the passwords.

Exhibit 1-G (ECF No. 267-8): It is a 4-page document where Nissenson inquired whether Amit signed an NDA and whether there were any other such agreements. The document includes, as an attachment, a signed copy of Amit's employment contract. Because Nissenson is included on the communication, the same issue exists about whether the exhibit is protected under the

attorney-client privilege.

Exhibit 1-H (ECF No. 267-9):  It is 5-page document containing Hofman's list of "trade secrets" and counsel's response about what areas fall under trade secrets.  It also contains the "smoking gun" email from Amit's draft email.  Nissenson is copied on the exchange; thus, the same issue exists about whether protection exists under the attorney-client privilege.  Additionally, Plaintiffs were inconsistent in their proposed redactions.  As stated above, Plaintiffs seek to redact language from the Riverland NDA on the ground that the document was attached to a purported privileged communication.  Yet, the "smoking gun" email also was attached to a purported privileged communication, but Plaintiffs have not sought to redact its contents.  *Cf* Proposed Redactions, at 20 (ECF No. 313) (redacting Riverland NDA information) *with* Non-redactions, at 32 (ECF No. 313) (leaving the smoking gun email unredacted).  Plaintiffs' inconsistencies show they have used their purported privileges selectively.

Exhibit 1-I (ECF No. 267-10):  It is a 5-page document with some duplicative emails about the "smoking gun" email and Hofman's trade secret list.  The document also contains a message exchanged between Barker and Amit about returning an NDA.  Because Nissenson is included on the communication, the same issue exists about whether the exhibit is protected under the attorney-client privilege.

Exhibit 1-J (ECF No. 267-11):  It is a 1-page document with a duplicate "trade secret" list that Hofman drafted.  Because Nissenson is included on the communication, the same issue exists about whether the exhibit is protected under the attorney-client privilege.

Exhibit 1-K (ECF No. 267-12):  It is a 2-page document further duplicating emails contained in prior exhibits.  Because Nissenson is included on the communication, the same issue

exists about whether the exhibit is protected under the attorney-client privilege.

Exhibit 1-L (ECF No. 267-13):  It is a 2-page document where Hofman answers questions about items on the "trade secret" list and states that RED won the Charlotte Douglas airport project, which project RED learned about via employment at HTS.  Because Nissenson is included on the communication, the same issue exists about whether the exhibit is protected under the attorney-client privilege.

Exhibit 1-M (ECF No. 267-14):  It is a 210-page document.  About 3 pages address RED's user interface looking similar to a controller application and SeeControl, which is Plaintiffs' non-trade secret graphical user interface.  The pages also contain Hofman's allegation that the defendants stole internal, non-visible practices and methodologies.  (Of note, Plaintiffs seek to redact the following italicized language from the August Memorandum Decision: "*Plaintiffs have acknowledged that SeeControl's display* is not a trade secret, and they have not pursued allegations on *that graphical use interface*."  Proposed Redaction, at 19 n.12 (ECF No. 313).  That information was taken from a hearing and not from the *in camera* documents.  *See* Hr. Tr., at 186–89 (ECF No. 283).  Plaintiffs have provided no explanation why that language should be redacted.)  The next 5-pages of Exhibit 1-M are mainly duplicative of prior exhibits.  The remainder of the document contains user manuals.  Because Nissenson is included on the communication, the same issue exists about whether the exhibit is protected under the attorney-client privilege.

Exhibit 1-N (ECF No. 267-15):  It is a 7-page document with Nissenson introducing corporate counsel to the litigation counsel.  The document addresses various acquisitions and name changes by Plaintiffs.  It also contains a press release and some duplicative emails.  Because Nissenson is included on the communication, the same issue exists about whether the exhibit is

protected under the attorney-client privilege.

Exhibit 1-O (ECF No. 267-16):  It is a 5-page document published by Thomson Reuters on trade secret laws in Utah, which Plaintiffs' counsel states he obtained as part of his pre-filing research.

Exhibit 1-P (ECF No. 267-17):  It is a 6-page document between Plaintiffs' counsel and Riverland's counsel proposing terms of a settlement agreement between Plaintiffs and Riverland. The document is not a privileged communication.

Exhibit 1-Q (ECF No. 267-18):  It is a 13-page document where Amit sent an email to Plaintiffs' counsel with a Rule 11 motion attached.  The document is not a privileged communication, and Plaintiffs also filed an unredacted copy of it (ECF No. 266-2).

Exhibit 1-R (ECF NO. 267-19):  It is a 14-page document where Amit sent a revised email with his Rule 11 motion attached.  The document is not a privileged communication, and Plaintiffs also filed an unredacted copy of it (ECF No. 266-3).

Exhibit 1-S (ECF No. 267-20):  It is a 35-page document where Amit sent Plaintiffs' counsel a revised Rule 11 motion.  It also includes email exchanges between Amit and Plaintiffs' counsel about whether certain people would be made available for deposition and so forth.  The document is not a privileged communication, and Plaintiffs also filed an unredacted copy of it (ECF No. 266-4).

Exhibit 1-T (ECF No. 267-21):  It is a 20-page document where Amit sent an email about him likely filing a RICO complaint in California against Plaintiffs, with the draft complaint attached.  The document is not a privileged communication, and it is unclear if Plaintiffs provided the exhibit to the defendants.

Exhibit 1-U (ECF No. 267-22):  It is a 4-page document involving settlement discussions between the parties.  The document is not a privileged communication, and it is unclear if Plaintiffs provided the exhibit to the defendants.  Additionally, it is questionable whether such a document should have been filed with the court.

Exhibit 1-V (ECF No. 267-23):  It is a 20-page document involving further settlement discussions between the parties, along with caselaw and a listing of properties owned by Shai Lustgarten.  The document is not a privileged communication, and it is unclear if Plaintiffs provided the exhibit to the defendants.  Additionally, it is questionable whether such a document should have been filed with the court.

To summarize, seven of the twenty-three exhibits contain no attorney-client or work product privilege (Exhibits 1-P through 1-V).  Three of those seven were filed as unredacted documents (Exhibits 1-Q through 1-S).  The remaining sixteen exhibits are analyzed further below.

**Court's Review of the Documents and Context in Which They Were Filed**

As noted in the court's August Memorandum Decision, Plaintiffs filed the *in camera* documents to oppose a Rule 11 sanctions motion.  Mem. Dec., at 35 (ECF No. 310).  After reviewing the totality of the circumstances, the court concluded that "Plaintiffs engaged in sharp practices to deprive the defendants an opportunity to respond to Plaintiffs' arguments and treated *non-privileged* information as a sword and shield."  *Id.* at 37 (emphasis in original).  The court further concluded "the defendants [had] a right to see this information."  *Id.*; *see also* Order to Show Cause, at 1 (ECF No. 311).

Although the court put Plaintiffs on notice that their *in camera* filing may need to be disclosed, the notice only referenced disclosure to the defendants.  *See* Order (ECF No. 261).

Consequently, after the court cited to some of the *in camera* documents in its August Memorandum Decision, it afforded Plaintiffs an opportunity to "show cause why the Memorandum Decision should not be unsealed in its entirety."  Order to Show Cause, at 1 (ECF No. 311).  The court further stated, "[t]o the extent Plaintiffs assert attorney-client privilege or work product, [they] shall propose redactions to the Memorandum Decision."  *Id.*

Plaintiffs' response to the order to show cause asserted they had maintained the privilege due to an express reservation and based on caselaw from "other courts – including those in this District."  Response to Order to Show Cause, at 1 (ECF No. 312).  Plaintiffs further asserted that certain non-privileged documents did not have to be disclosed because they were part of a privileged document, and thus, the whole document was privileged.  *Id.* at 2.   Plaintiffs also asserted they had obtained the court's permission to file the documents *in camera* and contend even though they knew the court may order the documents to be disclosed, that did "not constitute waiver" because the disclosure was involuntary.  *Id.* at 3–4.  Thus, Plaintiffs proposed parts of the August Memorandum Decision and Order be redacted.

## ANALYSIS

### I.    SCOPE OF PRIVILEGES

Attorney-client privilege extends to protecting "the giving of professional advice to those who can act on it," and to "the giving of information to the lawyer to enable [the lawyer] to give sound and informed advice."  *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981) (citation omitted).  "[T]o encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice," such "communications must be protected against compelled disclosure."  *Id.* at 389, 395.

The attorney-client privilege is not meant to put an opponent in a "worse position than if the communications had never taken place." *Id.* at 395. Instead, "[t]he privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Id.* "A fact is one thing and a communication concerning that fact is an entirely different thing." *Id.* at 395–96 (quotations and citations omitted). This means "[t]he client cannot be compelled to answer the question, 'What did you say or wrote to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." *Id.* at 396 (quotations and citation omitted).

Additionally, "the mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege." *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (quotations, citation, and alteration omitted). For a privilege to attach, "the communication between a lawyer and client must relate to legal advice or strategy sought by the client," and "[t]he burden of establishing the applicability of the attorney-client privilege rests on the party seeking to assert it." *Id.* at 1182–83 (quotations, citations, and alteration omitted).

As to the work-product, it is protected as stated under rule 26(b)(3) of the Federal Rules of Civil Procedure, because "it is essential that a lawyer work with a certain degree of privacy." *Upjohn Co.*, 449 U.S. at 397–98 (quotations and citation omitted). Nevertheless, "[w]here relevant and nonprivileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had." *Id.* at 399 (quotations and citation omitted). Moreover, "a litigant cannot use the work product doctrine as both a sword

and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion." *Frontier Ref. Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 704 (10th Cir. 1998).  The same applies to attorney-client information.

Because "privileges contravene the fundamental principle that the public has a right to every man's evidence," they are "strictly construed and accepted only to the very limited extent that . . . excluding relevant evidence has a public good transcending the normally predominate principle of utilizing all rational means for ascertaining truth." *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (quotations, citations, alterations omitted).  Accordingly, in the Tenth Circuit, "courts need not allow the claim of attorney-client privilege when the party claiming the privilege is attempting to utilize the privilege in a manner that is not consistent with the privilege." *Id.* (quotations, citation, and alteration omitted).  "Any voluntary disclosure by the client is inconsistent with the attorney-client relationship and waives the privilege."[2]   *Id.*

---

[2]  In *United States v. Zolin*, 491 U.S. 554 (1989), the Court recognized "that disclosure of allegedly privileged materials to the district court for purposes of determining the merits of a claim of privilege does not have the legal effect of terminating the privilege." *Id.* at 568.  That statement was made in the context of the crime-fraud exception.  In such circumstances, the "Court has approved the practice of requiring parties who seek to avoid disclosure of documents to make the documents available for *in camera* inspection." *Id.* at 569 (citations omitted).  In the crime-fraud exception context and other similar situations, a non-privilege holder seeks judicial review of alleged attorney-client communications to determine if the documents actually are privileged or if the privilege is waived due to a crime or fraud.  In contrast, this case involves the privilege holder using the document to benefit their position in this litigation, while at the same time using the privilege to preclude the defendants from viewing the documents.  The voluntary production of privileged documents under the latter situation is therefore distinguishable.

(quotations and citation omitted).

In this case, at least seven of the *in camera* documents contain no privileged information. For the remaining sixteen *in camera* documents, Plaintiffs have the burden of establishing the applicability of the attorney-client privilege.  At times, communications with a consultant can fall within the scope of attorney-client privilege.  At times, multiple people within a company can also fall within that scope, and a communication with all of them on it would not invalidate the privilege.  Because the attorney-client privilege is strictly construed, however, a party must show why the privilege applies, rather than presuming it exists because an attorney was included on the communication.  Plaintiffs have not done so for eleven of the sixteen exhibits that contain consultant or multi-individual communications.  Additionally, in Plaintiffs' motion to file documents *in camera*, they baldly stated their proposed filing was privileged, without explaining how the sixteen *in camera* documents were protected.

In Plaintiffs' response to the Order to Show Cause, Plaintiffs have raised the issue of voluntariness and non-privileged documents being protected when attached to privileged documents.  The court now turns to those two arguments.

## II.    FILING EXHIBITS IN CONTEXT OF RULE 11 MOTION

As stated above, "[a]ny voluntary disclosure by the client is inconsistent with the attorney-client relationship and waives the privilege."  *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d at 1185. Plaintiffs contend the court should redact the August Memorandum Decision because Plaintiffs obtained permission to file documents *in camera*.  Thus, according to Plaintiffs, the production was not a voluntary waiver of privilege, and information from the documents should be redacted from the decision.  Yet, permission is not compulsion, and the court's permission contained a

warning that the court may require production after it reviewed the documents.

The 1983 Advisory Committee's Note to Rule 11 of the Federal Rules of Civil Procedure states that "the rule does not require a party or an attorney to disclose privileged communications or work product in order to show that the signing of the pleading, motion or other paper is substantially justified."  As courts have recognized, however, the "comment merely echoes a truism: a party is not obligated to disclose privileged information in a Rule 11 proceeding.  Instead, it has the opportunity to decide *whether* to make such a disclosure."  *QBE Ins. Corp. v. Jorda Enters.*, 286 F.R.D. 661, 665 (S.D. Fla. 2012) (italic in original, other emphasis omitted) (citing *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, No. SACV 0400689MRP VBDX, 2007 U.S. Dist. LEXIS 34467, at *12 (C.D. Cal. Apr. 16, 2007)).  While *in camera* review remains an option, based on the totality of circumstances, it is not a mandate.  Consequently, once a party elects to produce privileged documents, it can constitute a limited waiver.  *See id.* at 665–66.

In this case, because the court placed Plaintiffs on notice that they may be required to disclose the *in camera* documents if Plaintiffs proceeded to file them, Plaintiffs had the opportunity to decide how to proceed.  Plaintiffs voluntarily elected to file the documents despite that notice.  Additionally, caselaw existed contrary to Plaintiffs' position about *in camera* filings in a Rule 11 context, including caselaw in this district.  *See* Mem. Dec. at 35–36 (ECF No. 310).  Plaintiffs therefore had notice that caselaw was not uniform on the issue.  They still elected to proceed.  The court concludes such election constituted a waiver of any attorney-client or work product privilege.

As to those exhibits that had non-privileged information attached to potential privileged communications, Plaintiffs asserted "they were under no obligation to deconstruct the documents to isolate non-privileged elements."  Response to Order to Show Cause, at 2–3 (ECF No. 312).  In

support of their position, Plaintiffs cite to *Moreno v. SFX Entertainment, Inc.*, No. CV 14-0880 RSWL (CWx), 2015 U.S. Dist. LEXIS 186272 (C.D. Cal. Aug. 28, 2015). *Id.* at 2 n.2. In *Moreno* the court stated, "[t]he fact that non-privileged information was communicated to an attorney may be privileged, even if the underlying information remains unprotected." *Moreno*, 2015 U.S. Dist. LEXIS 186272, at *6 (citing *Upjohn Co.*, 449 U.S. at 395–96)).

In *Moreno*, the opposing party already had the privileged documents, and the opposing party was attempting to use the documents in support of summary judgment. *Id.* at *3–4. In this case, Plaintiffs are seeking to use their own documents to defeat a Rule 11 motion, while simultaneously withholding the documents from the defendants. Thus, the issue here is not whether Plaintiffs were required to produce such exhibits during discovery, or whether the defendants wrongly came into possession of privileged documents. Instead, the issue is about fundamental fairness in litigation.

> We are told that we cannot have our cake and eat it too. What this means in the privilege context is that a litigant cannot at one and the same time place privileged matters into issue and also assert that what has been placed into issue nonetheless remains privileged and not subject to full discovery and exploration.

*QBE Ins. Corp.*, 286 F.R.D. at 664 (quoting Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine*, at 343 (4th ed. 2001)). Rather than ensuring a fair process, Plaintiffs sought to withhold at least sixteen exhibits from the defendants while simultaneously using the exhibits as a sword to defeat a motion for sanctions.

Undeterred by the concerns expressed by the court in its August Memorandum Decision, at 35–37 (ECF No. 310), Plaintiffs' response to the court's Order to Show Cause included proposed redactions to the August Memorandum Decision that are problematic. Plaintiffs selectively

redacted certain non-privileged information on the ground that the information was attached to a privileged document while leaving other portions of the decision unredacted even though additional non-privileged information also was attached to a privileged document. *Cf* Proposed Redactions, at 20 (ECF No. 313) (redacting Riverland NDA information) *with* Non-redactions, at 32 (ECF No. 313) (leaving the smoking gun email unredacted). Plaintiffs' inconsistencies further support that Plaintiffs are engaging in improper sword/shield conduct. Plaintiffs elected to place the *in camera* documents at issue. Having done so, it cannot invoke the shield of privilege to preclude disclosure.

Finally, fact discovery has closed, and the court has ruled in favor of the defendants on Plaintiffs' trade secret claims. Disclosure therefore will not disrupt the trade secret proceedings. *See* Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment (discussing timing to reduce disruption of a case).

## CONCLUSION AND ORDER

Based on the totality of the circumstances, the court concludes Plaintiffs have failed to show cause why the court's August Memorandum Decision should not be unsealed in its entirety. Accordingly, the court hereby directs the Clerk's Office to unseal Memorandum Decision and Order (ECF No. 310). Additionally, for the reasons stated above and in the court's August Memorandum Decision, the court concludes Plaintiffs have failed to show why the *in camera* documents should remain under seal. Thus, the court also directs the Clerk's Office to unseal ECF No. 267 and all exhibits attached thereto. Finally, the court directs the Clerk's Office to unseal ECF No. 313 because it only contains proposed redactions to the August Memorandum Decision, which decision is now being unsealed.

SO ORDERED this 6th day of November, 2023.

BY THE COURT:

Clark Waddoups
United States District Judge